CORNELIUS S. VAN WAGONER AND OTHERS, RECEIVERS OF THE PRESIDENT AND DIRECTORS OF THE PEOPLE'S BANK AT PATERSON v. THE PATERSON GAS LIGHT COMPANY.

1. The debtor of an insolvent corporation has the same equitable right of set-off against a claim of the receivers, appointed under the act entitled "An act to prevent frauds by incorporated companies," that he had against the corporation at the time of its insolvency.

2. The assignment to the receivers passes the rights and property of the corporation precisely in the same plight and condition, and subject to the same equities, as they were held by the corporation.

3. The receivers are not regarded as purchasers for a valuable consideration, but as the voluntary assignees and personal representatives of the corporation.

4. A debtor of an insolvent bank, whether his indebtedness has actually accrued or not at the time of the insolvency, may set off against his indebtedness to the receivers, either a deposit in the bank, or bills of the bank, bona fide received by him before the failure of the corporation.

5. The claim of the debtor against the insolvent corporation does not constitute a legal set-off under the general statute of set-off, as against the receivers. But in an action at law by the receivers, the defendant will be permitted, under the provisions of the statute to prevent frauds by incorporated companies, to avail himself of the defence.

---

This action was brought by the plaintiffs, as receivers of the President and Directors of the People's Bank of Paterson, ap-

pointed by the chancellor, under the act to prevent frauds by incorporated companies, on a draft or bill of exchange for five hundred dollars, accepted by the defendants, payable to the order of the Machine Company, and by them endorsed to the People's Bank of Paterson, bearing date the thirtieth day of July, in the year of our Lord one thousand eight hundred and fifty-one, and payable two months after date, coming to maturity on the third day of October, in the year of our Lord one thousand eight hundred and fifty-one.

The bank stopped payment on the twenty-fourth day of September, in the year eighteen hundred and fifty-one, and a bill was filed and an injunction granted on the following day. Receivers were appointed on the twenty-ninth day of the same month.

The bank held the draft sued on at the time it stopped payment, and the receivers came into possession of it among the other assets of the bank.

At the time the bank stopped payment, the defendants had on deposit therein four hundred and fifty-five dollars and ninety cents, and had two hundred and eighty-seven dollars in the bills of the bank, and continued to hold the same until the draft became due and until this suit was brought, and still hold the same, except as hereafter mentioned.

When the draft fell due, they tendered to the clerk or notary, who presented it for payment, a check on the bank to the amount of their deposit, and tendered a sufficient amount of said bills to make up the amount of the draft. The balance of bills held by the defendants they presented to the receivers, and took their certificate therefor.

This suit being brought, the defendants pleaded the general issue and payment, and gave notice of set-off.

A verdict was taken for the plaintiffs at the circuit for the amount of the draft, subject to this case, reserved by the Chief Justice for the consideration of the Supreme Court.

The question is, whether the defendants are entitled to set off the above demands in an *action at law*, brought against them by the receivers on the draft?

Receivers v. The Paterson Gas Light Company.

*J. P. Bradley*, attorney of defendants; *Isaac Van Waggoner*, attorney of plaintiffs.

This cause was argued at the present term, before the CHIEF JUSTICE, and Justices NEVIUS, ELMER, and POTTS.

*Van Waggoner*, with whom was *A. Whitehead*, for the plaintiffs.

I. The relation of mutual dealers did not subsist between the bank and the defendants. Cross-indebtedness does not constitute mutual dealing. A deposit is a special bailment, not a credit given to the bank. There had been no demand of the deposit and refusal to pay. 1 *Amer. Leading Cases* 320.

2. There have been no dealings between the receivers and the defendants. The receivers are third parties, and stand in the situation of endorsees of the bill before maturity. They were appointed before the bill was due. There can be no legal set-off as against them. 3 *Wend.* 17–22; 2 *Green's Chan.* 273; 3 *Harr.* 227; 4 *Halst.* 120.

By the statute authorizing set-offs, the right of set-off belongs to the party, his executors or administrators, not to his assignees. *Rev. Stat.* 804, § 11.

3. The defendants can only resort to the provisions of the law under which the receivers were appointed, and claim the allowance of their demand as a *just* set-off. But the claim of the defendants is not just as against the other creditors. The fund should be divided equally. As between the creditors, "equality is equity." 2 *Green's Chan.* 271.

If the set-off be allowed, the defendants will receive the full amount of their claim against the bank, while the dividend of the other creditors will be proportionably diminished.

The debtors of the bank should not be permitted to discharge their indebtedness in a depreciated currency. 4 *Halst.* 137.

4. If the set-off be equitable, the defendants cannot have the benefit of the defence in a court of law. The statute has provided a specific tribunal and mode of redress. The defendants are entitled to the statutory relief, and no other.

*Bradley*, for the defendants.

The defendants had a valid claim against the bank, when it stopped payment. If the defence cannot be sustained under the general statute of set-off, we claim the benefit of it under the general issue, by virtue of the provisions of the statute under which the receivers were appointed.

Set-offs were not allowed at common law, on account of the rule of pleading, that the issue must be single. They are favored in equity. They were always allowed by the civil law. Natural justice is on the side of allowing them.

The bankrupt laws, both of England and the United States, have allowed set-offs. The balance is regarded as the real debt. These acts of parliament are strong authorities to show that the highest tribunal in the civilized world regards the set-off as just and equitable.

The language of the statute is directory to the commissioners. It was designed to prescribe a rule for their action, not to leave it to their discretion. The courts are to see that the duty of the receivers is performed. The law should be executed in the same mode, both by courts of law and of equity. A court of law is bound to carry out the provisions of the act, and to dispense the same law as the receivers. Our statute to prevent frauds by incorporated companies is in effect a corporation bankrupt law. 2 *Green's Chan.* 270.

Under the bankrupt laws, (independent of the statute of set-off) it has often been held that the set-off should be allowed at law. *Babington on Set-off* 116 ; 4 *Burr.* 2220 ; 4 *Term R.* 212; 6 *Term R.* 57 ; 2 *Smith's Lead. Cas.* 211, 175 ; 6 *Taunt.* 517 ; 4 *Taunt.* 888 ; *Cooper's Bank. Law* 274–5; 2 *Stran.* 1234.

The claim must exist at the time of the failure of the corporation. Contingent debts cannot be set-off. 2 *John. Chan.* 274.

The decisions in New Jersey are not directly in point, but none of them contravene the claim of the defendants to be allowed their set-off. 3 *Halst.* 172 ; 4 *Halst.* 121 ; 2 *Green's Chan.* 266.

The receivers stand in the stead of the bank. They are trustees for the same uses. They can have no more property than the bank.

The New York statute to prevent frauds by incorporated companies is silent as to the right of set-off. The right to set-off in that state could only be allowed in equity. It has uniformly been recognised by that court. 1 *Paige* 444, 584, 585.

*Whitehead,* in reply.

It is clear, from the settled decisions of the courts, that the claim of the defendants does not constitute a legal set-off. The act applies only to the parties dealing, their executors or administrators, not to assignees. 3 *Harr.* 227; 5 *Cowen* 23.

The bankrupt laws settle what shall be deemed a set-off The legislature intended, by the act now in question, to confide to the receivers the *discretion* of allowing equitable set-offs.

The claim of defendants is not equitable. The deposit of money by the defendants, and the holding of the bank notes by them at the failure of the bank, was fortuitous or accidental. The notes were not taken to pay their debt, nor was the deposit made for that purpose. There was no agreement by the bank to apply the bank notes or the deposits to the payment of the claim against the defendants.

There is a real difference, according to the course of business, whether the bill or note held by the bank is due or not. If over due, and the debtor has a deposit in the bank, the bank may charge up the note and balance the account. The depositor may therefore, in such case, insist that the note is paid as far as the deposit goes. But the case is otherwise where the note is not due.

The policy of the act is to put the whole assets of the corporation into a common fund, and make an equal distribution among the creditors.

He also cited 1 *Atkyns* 231; 1 *Craige & Phil.* 160; 5 *Mason* 207; 2 *Story's Eq. Jur.* § 1433-4-5-6.

The cause was argued before the CHIEF JUSTICE and Justices NEVIUS, ELMER, and POTTS.

The CHIEF JUSTICE. This action is brought by the receivers of an incorporated company, appointed by the chancellor, un-

der the act to prevent frauds by incorporated companies. Its object is to recover the amount of a bill of exchange for $500, accepted by the defendants, and which was endorsed to and held by the corporation, at the time they stopped payment. The validity of the acceptance, and the defendants' liability upon it, are not disputed. When the bank stopped payment, the defendants had a deposit in the bank, amounting to $455.90. They also had in their hands bank notes, or bills of the bank, which they still hold, sufficient, with the deposit, to satisfy the demand of the plaintiffs. The question is, whether the defendants shall pay their entire debt, and come in for a dividend from the receivers for their cross-demand, or, whether the one claim shall be set off against the other, and the balance, if any, be deemed the real debt. As between the defendants and the bank, it is a clear case of mutual indebtedness, existing between them at the time the receivers were appointed. As against the bank, the defendants' claim would constitute a valid set-off, both at law and in equity. Are the rights of the defendants affecetd ; and if so, how far, by the appointment of receivers ?

Three questions are involved, which will be considered in the order here stated, *viz:*

I. Does the defendants' claim constitute a technical set-off at law ?

II. Is it a good set-off in equity ?

III. If it be an equitable set-off merely, can it be allowed in this action.

I. It is clear that the case is not within the provisions of the statute authorizing a set-off at law. As between the plaintiffs and the defendants, the claims are not mutual debts. Where there are mutual debts, there must be mutual remedies. But the defendants have no claim against the receivers. They could maintain no action against them. Nor could the defendants have judgment against the receivers in this action in case the set-off should exceed the plaintiffs' demand. *Cumberland Bank* v. *Hann,* 3 *Harr.* 222; *Ryall* v. *Larkin,* 1 *Wilson* 155; *Buller's N. P.* 181 ; *Eden's Bank Law* 186.

11. But the defendants rest their defence on the ground, that

the set-off is *just and equitable*, and that a court of law may afford them adequate relief under the general provisions of the statute, by virtue of which the receivers were appointed. This raises the material question in the cause. By what principle, in regard to set-off, should the receivers be governed in the distribution of the assets of an insolvent corporation ? What is *equitable*, as between the corporation and its creditors, and as between the creditors themselves ?

The rules of equity, as applied to cases of bankruptcy, furnish the most familiar and apt analogy in aid of our inquiries.

It seemed to be assumed upon the argument, by the counsel of the plaintiffs, that the equitable doctrine of set-off, as applied in cases of bankruptcy, is founded upon the express provisions of the statutes. And it is certainly true that all modern bankrupt laws contain a provision, that, in all cases where there are mutual debts or mutual credits, the balance only shall be deemed the true debt, and the rest of the claim shall be deemed adjusted by the set-off. And the fact, that all well considered bankrupt laws do contain so broad a provision in favor of set-offs, is in itself the strongest authority in support of the natural equity and justice of the provision. *Act 4th April,* 1800, § 42, 2 *U. S. Stats. at Large* 440 ; *Act 19th August* 1841, § 5, 5 *Ib.* 19 ; *Statute* 5 *Geo. II, cap.* 30, § 28.

It is equally true, however, that the jurisdiction of equity over set-offs in cases of bankruptcy, and the practice of allowing them, was not derived from the authority of the statute, but was exercised by the courts long prior to the introduction of the provision into the statute.

The general right of set-off was first introduced in the bankrupt law in the year 1708, by the statute 4 *Anne, cap.* 17 ; but the course of adjusting the balance was adopted in practice as early as 1675. Thus, in 28 *Car.* 2 (1675), Lord North said, " If there are accounts between two merchants, and one of them becomes bankrupt, the course is not to make the other to pay the whole that was originally intrusted to him, and to put him, for the recovery of what the bankrupt owes him, into the same condition with the rest of the creditors, but to

make him pay that only which appears to be due to the bankrupt on the foot of the account." 1 *Modern* 215.

And in *Ex parte Stephens*, 11 *Vesey* 26, Lord Eldon said, " As to the doctrine of set-off, this court was in possession of it, as grounded upon principles of equity, long before the law interfered. It is true, where the court do not find a natural equity going beyond the statute, the construction of the law is the same in equity as at law. But that does not affect the general doctrine upon natural equity."

It has been formerly supposed, and frequently asserted, (until the error was demonstrated by Mr. Christian) that the general right of set-off was introduced into the law by the expired bankrupt act of the *4th and 5th Anne, chap.* 17, in which it is first expressly mentioned. But that learned person has clearly shown that the course of adjusting the balance, was previously adopted in practice, and confirmed by the decisions of courts of law. *Eden's Bank. Law* 186 ; *Chapman* v. *Derby*, 2 *Vern.* 117.

The English statute authorizing set-off in bankruptcy, is not only earlier in point of time, but is broader in its provisions than the general statute of set-off. The greater extent to which the doctrine has been carried in cases of bankruptcy, is doubtless owing to the clear natural equity of the practice and the obvious injustice of compelling one of two parties; mutually indebted, to pay his entire debt, and then to receive only a dividend, with the other creditors, upon his own claim.

The same equitable principle has been uniformly applied under the insolvent laws, where the statute is silent in regard to set-off. Neither our statute abolishing imprisonment for debt, nor the statute regulating the distribution of the estate of insolvents, nor that respecting assignments by debtors for the benefit of creditors, contains any provision in respect to set-off. And it is clear, that in an action by the assignee, under an assignment made for the benefit of creditors, there could be no set-off *at law.* Yet the uniform construction of the statute has been, that the debtor of the insolvent is entitled to the same allowance, by way of set-off against the claims of the

assignee, that he would have been as against the insolvent himself.

We have, so far as I am aware, no adjudication of the question in this state, though it is believed to be regarded by the profession as well settled in practice.

But, in Massachusetts, the point has been expressly adjudicated upon the construction of their act for the distribution of insolvent estates, which contains no provision respecting set-off. It was the opinion of the court, that, by force of the statute, all mutual demands subsisting between the insolvent and his creditors, at the time of his death, were to be liquidated and balanced. *McDonald* v. *Webster*, 2 *Mass.* 498.

The rule pervades both bankrupt and insolvent laws founded on general principles of equity, that all cross-demands, whether connected or independent, provided they be mutual as between the bankrupt, or the insolvent, and the creditor, shall be set-off, and the balance only shall be deemed the indebtedness upon the one side or the other. The assignees take a bankrupt's property in the same condition, and subject to the same burthens, as the bankrupt himself held it. And the rule rests on the principle, that the assignees are considered not as purchasers for a valuable consideration, but as voluntary assignees and personal representatives, and are therefore distinguished from particular assignees. 2 *Vern.* 428, *note* 1.

" I have always understood," said Lord Eldon, " that the assignment from the commissioners, like any other assignment, by operation of law, passed the rights of the bankrupt precisely in the same plight and condition as he possessed them. Even when a complete legal title vests in them, and there is no notice of any equity affecting it, they take subject to whatever equity the bankrupt was liable to." *Mitford* v. *Mitford*, 9 *Vesey* 100; *Brown* v. *Heathcote*, 1 *Atkyns* 162; *Classon* v. *Morris*, 10 *John. R.* 540; *Murray* v. *Lylburn*, 2 *John. Chan.* 443.

The act to prevent frauds by incorporated companies, so far as it relates to the estate of an insolvent corporation, is, in all its essential elements, a bankrupt law. It leaves the creditor, indeed, the naked remedy of proceeding to judgment against

a corporation, stripped at once of its property, and the right of exercising its franchises ; and thus avoids the constitutional objection of interfering with the obligation of contracts. But, like a bankrupt law, it vests the whole property of the corporation, *by operation of law*, in the hands of assignees, to be distributed among the creditors upon principles of justice and equity.

The assignment to the receivers, being by operation of law, passes the rights and property of the corporation precisely in the same plight and condition, and subject to the same equities, as the corporation held them. The receivers are not assignees for a valuable consideration, in the ordinary sense of that term, but are regarded as the voluntary assignees and personal representatives of the corporation.

The statute, moreover, in cases of mutual dealing between the corporation and any other person or persons, expressly authorizes the receivers to allow just set-offs in favor of such persons, in all cases in which it shall appear to the receivers that the same ought to be allowed according to law and equity.

The claim of the defendants in this case does not, as has been seen, from technical considerations, constitute a set-off at law. But as the claim was a clear legal and equitable set-off against the bank at the time of the insolvency, and as the receivers took the rights and property of the corporation in the same plight and condition, and subject to the same equities, that the bank held them, it is clear that the claim of the defendants is an equitable set-off against the demand of the receivers.

This view of the question is sustained by the authority of adjudicated cases. By an act of the legislature of this state, passed on the 23d of November, 1825, (*Pamph. Laws* 37) the act of incorporation of the New Jersey Protection and Lombard Company was repealed, and trustees were appointed to close its business and distribute its assets. By a supplemental act, passed on the 9th of December, 1825, (*Pamph. Laws* 73) the powers and duties of the trustees were defined ; and, so far as relates to the question of set-off, they are in the identical words of the act now under consideration.

Upon a bill filed in the Court of Chancery of New York, by a creditor against the trustees, the chancellor said, "The trustees have all the rights which were vested in the corporation at the moment of its dissolution, and the complainant can make any defence to an action brought against him by the trustees, which he might have made against a suit brought by the corporation, had it continued in existence. In relation to the set-off, there can *be no doubt ,' his equitable right to be allowed for any demand which he had against the bank at the time of the repeal of its charter.* If he has purchased up bills of the bank, or procured the assessment of other claims since that time, he cannot avail himself of them, but must come in for his distributive share with the rest of the creditors." *McLaren* v. *Pennington*, 1 *Paige* 112.

In *Miller* v. *The Receivers of the Franklin Bank*, 1 *Paige* 444, Miller had a deposit in the bank in his name, as public administrator. He also held $1150 of the bills of the bank, drawn from the bank on his account as public administrator, before the bank stopped payment. The bank had at the same time a claim against Miller, as an individual, secured upon real estate. He claimed to set off the notes held by him, and his deposit as public administrator, against his individual debt to the bank. The only question appears to have been, whether the debts were mutual, the one being in his own right, and the other as public administrator. The court allowed the claim to set off both the deposit and the notes.

In *The matter of the Receiver of the Middle District Bank*, 1 *Paige* 585, the same chancellor said, "In the case of *Miller* v. *The Receivers of the Franklin Bank*, this court decided that any equitable set-off which the debtor had at the time the bank stopped payment, was not altered by the appointment of a receiver. *It makes no difference whether the debt of the bank was then payable, or has since become due.*"

The last two decisions of the Court of Chancery of New York were given by way of instruction to receivers. They have been since acquiesced in, and it is understood that they furnish the rule, now universally adopted by receivers in that state, which is, to allow deposits made in the bank, and notes

of the bank received prior to the appointment of receivers, as offsets against any indebtedness to the bank, whether the debt to the bank was due and payable, or not, prior to the appointment of receivers.

In *Haxtun* v. *Bishop*, 3 *Wend.* 13, the Supreme Court of New York decided, that as the note in question passed before it was due into the hands of the plaintiff, as a receiver and trustee for the creditors, and the note being negotiable, and having been negotiated before it was due, the maker could not set up a defence of set-off. And it is clear that the claim did not constitute a technical legal set-off. Giving to that decision the fullest operation, it cannot affect the question now before this court. Upon the construction of the statute of this state, the court is to settle the question upon *equitable*, not upon *strictly legal* principles. It may, however, be suggested, that the view of the court in *Haxtun* v. *Bishop*, holding the receivers, who take by operation of law, as assignees for a valuable consideration, is at war not only with repeated adjudications, but with the spirit and policy of the law.

I am of opinion, both upon principle and upon authority, that the debtor of an insolvent corporation loses none of his rights by the act of insolvency; that he has the same equitable right of set-off against the receivers that he had against the corporation at the time of its insolvency; and, consequently, that a debtor of the bank, whether his indebtedness has actually accrued or not at the time of the insolvency, may in equity set off against his debt either a deposit in the bank or bills of the bank *bona fide* received by him before the failure of the bank.

It is said, that the object of the act is to do *equal justice* to all the creditors, and that *equality is equity*. But equality of what, and among whom? Clearly, of the *assets* of the bank among the *creditors* of the bank. In cases of cross-indebtedness, the assets of the bank consist only of the *balance* of the accounts. That is all the fund which the bank itself would have had to satisfy its creditors, in case no receiver had been appointed. And there is no *equality* and no *equity* in putting a debtor of the bank, who has a just and legal set-off as against

the corporation, in a worse position, and the creditors in a better position, by the failure of the bank and the appointment of receivers.

It is said again, that the receivers might have assigned the note, and thus deprived the defendants of their set-off. If the position be sound, it does not follow that the set-off is not available against the receivers, while the note remains in their hands. But it is by no means clear that the defendants could thus have been deprived of their set-off; on the contrary, it would seem that the assignee must have taken it from the receivers, subject to all the equities subsisting against it in their hands. A party holding a negotiable promissory note against a bankrupt, payable without defalcation, may assign the note after the bankruptcy, and the assignee may come in under the commission. But he must allow all just set-offs existing at the time of the bankruptcy, and which would have been admitted if the assignment had not been made. *Humphreys* v. *Blight's assignees*, 1 *Wash. C. C. R.* 44.

It is said again, that no action could be maintained, either for a deposit or to recover the notes, until a demand had been made at the counter of the bank. The position has been questioned by high judicial authority. *Bank of Niagara* v. *McCracken*, 18 *J. R.* 493; *Jefferson Co. Bank* v. *Chapman*, 19 *J. R.* 322; *Haxtun* v. *Bishop*, 3 *Wend.* 13.

But admitting the legal objection in its full force, it is obviously a mere technical difficulty, and does not affect at all the equity of the case. Such an objection has never been held applicable to the settlement of a bankrupt or insolvent estate. The simple state of the case is, that the bank, at the time of its failure, held the money of the defendants, which had been deposited in the bank, and that the defendants held the promissory notes of the bank, which they had obtained in good faith, and in equity the bank was a debtor to the defendants for the money held on deposit, and for the amount of their bills in the defendants' hands. As applied to the settlement of a bankrupt or insolvent estate of an individual, there appears never to have been a question as to the equity of the rule, as above stated. No distinction is apparent, and none has been

suggested, which should exempt insolvent corporations from the application of the same principle.

III. The only remaining inquiry is, whether this court can administer the remedy to which the defendants are equitably entitled. This is but a subordinate question, touching not the right, but the mode of enforcing it; and it is of the less consequence, because if the equitable right of the party be established, it is obvious that he may always resort to equity, and obtain redress there, if it be denied at law.

The act to prevent frauds by incorporated companies is a remedial statute, designed for the suppression of fraud and the advancement of justice. The twelfth section is not merely directory, nor does it leave it to the discretion of the receivers whether set-offs shall be allowed or not. It was designed to prescribe a rule for their action, and to define and settle the rights of parties as well as to confer powers. In its operation, it entitles the party, as a matter of *legal right,* to the benefit of every set-off, legal and equitable. It is the policy of the act, that parties should have the benefit of its provisions, in whatever tribunal their rights may be drawn in question. When the question was presented at the circuit, the strong' inclination of my mind was to regard the whole subject as one exclusively of equitable jurisdiction, especially as the statute had, in express terms, authorized an appeal from the decision of the receivers directly to the chancellor, in a summary way. And the case would certainly have been relieved of its most serious difficulty, had the tribunal specially designated by the statute been resorted to. But the design of the statute was to simplify the remedy, as well as to define the right; and its end will be most effectually answered by promptly adjusting the rights of parties in compliance with its provisions, whenever it can be done without trenching upon settled principles. This may be done in the present case, and I am therefore of opinion that judgment should be entered for the defendants.

ELMER, J. Had this action been brought in the name of the bank itself, before the appointment of receivers, it is undeniable that the defendants would be entitled to their set-offs.

Receivers v. The Paterson Gas Light Company.

But it is insisted that, as there was no mutual dealing between the present plaintiffs and the defendants, the case does not come within the statute of set-offs. (*Rev. Stat.* 804, § 11.) I think this position is correct. That statute is confined in its terms to parties having mutual dealings, and their executors or administrators, and cannot be extended to parties suing, as these plaintiffs do, in their own names, upon a right of action derived from another. It provides that, if upon the trial it shall appear that the sum due to the defendant overpays the sum due the plaintiff, a verdict and judgment shall be rendered for the defendant against the plaintiff for the sum so overpaid, with costs. These plaintiffs are not liable to be sued for the debts of the bank, and no judgment could be given against them personally for any balance that might be found due to a defendant.

But the right to make the set-offs claimed on the part of the defendants does not rest upon the statute above referred to. It arises out of the provisions of the act under which the plaintiffs derive their power to sue. This act provides that the receivers appointed by the chancellor shall have power, " in case of mutual dealings between the said corporation and any other person or persons, to allow just set-offs in favor of such persons, in all cases in which it shall appear to the said receiver or receivers that the same ought to be allowed according to law or equity." (*Rev. Stat.* 133, § 12.) Although this provision is in its terms directory to the receivers, yet inasmuch as what is authorized to be done is for the sake of justice, and the rights of other persons depend upon its exercise, the obligation to make the set-off in a proper case is imperative, and must be enforced by courts of justice. 1 *Salk.* 609 ; 3 *Atk.* 311 ; 5 *John. Ch. R.* 112.

It does by no means follow that the defendants must be denied the benefit of a set-off, to which they would have been entitled if the suit were in the name of the bank, because it cannot be given in evidence under the plea of payment and the notice of set-offs prescribed for set-offs in ordinary cases. In the case of *Tucker* v. *Oxley*, (5 *Cranch* 34), the Supreme Court of the United States held that a set-off should be allowed

in accordance with the provisions of the United States bankrupt law, although in the state of Virginia, in which the action was brought, there existed no statute allowing set-offs in any case. The plaintiffs in the case now before us stand in this respect in the same situation as the obligor of an assigned bond, or the maker of a promissory note not containing the words, without defalcation or discount, who, when sued by the assignees of such instruments, are, by the express words of the statute making them assignable, entitled to all just set-offs they held against the original payees. Set-offs of this description are not within the statute of set-offs, could not be given in evidence under the plea of payment, and would be available against the assignors, if not used by way of defence against the bond or note. But it being the right of the defendant, when sued on such an instrument, to claim the benefit of such a set-off, if he thinks proper, he must be allowed to avail himself of it by means of a special plea or under the general issue, accompanied by such a notice as will apprize the opposite party of the nature of his claim. 3 *Green* 4; 3 *John. R.* 263.

As the bill declared on was not made payable originally to the bank, but was obtained by it of other parties, it is agreed that there was in fact no " mutual dealing " between the bank and the defendants. The expression " mutual dealing," in the statute under consideration, is of the same import as the words " dealing together," in the statute of set-offs, and in the title of that statute is used as precisely equivalent. Now it has never been doubted but that an assigned note or bond, in the hands of an assignee before action brought, makes him a mutual dealer with the maker of such bond or note, and may be set off against another debt due from such assignee to the maker thereof. In the case of *Tuttle* v. *Beebe*, (8 *John. R.* 152), it was held by the Supreme Court of New York, that the amount due on the plaintiff's bond, assigned to the defendant before the bringing of the action, might be set off, although there was no law of that state making bonds assignable and giving an action to the assignee in his own name. In these cases, although the parties may not be mutual dealers, in the sense that they have literally traded with each other,

yet each has given credit to the other, and by becoming mutually indebted, they have become, by operation of law, mutual dealers. I cannot doubt that it was the intention of the legislature to give a right of set-off in the case of insolvent corporations, at least to the same extent that it had been previously done between individual debtors. Indeed there is much reason to believe that it was intended to go farther, and although it is not necessary now to decide that point, I should be disposed to hold, that if the defendants had been at the time the bank failed the *bona fide* holder of its obligation, not yet due when this suit was commenced, they would have been entitled to set it off against their liability on the bill declared on. According to the legal meaning of the expression, these parties would have been " mutual dealers " previous to the failure and to the action brought, although they would not have been mutually indebted, and no set-off could have been allowed under the statute of set-off. That statute requires the parties not only to have been mutual dealers, but to be " indebted to each other," whereas the section requiring receivers of insolvent incorporations to allow just set-offs omits words implying mutual indebtedness, and gives the set-off to all who hold the relation of mutual dealers. The English statutes of bankruptcy allow the set-off where there have been " mutual credits given," a phrase which seems to have the same meaning as " mutual dealing," for, in legal effect, where there has been mutual credit, there has been mutual dealing. Under those statutes, it is well settled that debts not due may be set off against the assignees, as well as those that are. 1 *Atkyns* 230 ; 3 *Term R.* 507 ; 4 *Ib.* 211 ; 13 *Ves.* 65 ; 8 *Taunt.* 499.

Another objection to one of these set-offs, much insisted on by the plaintiffs' counsel, was, that no demands had been made for the money on deposit previous to the appointment of the receivers, and therefore, as no action could have been maintained for that money against the bank at that time, it cannot now be set off. Admitting that money deposited with a banker could not be recovered in an action for money had and received, without averring and proving a special demand and refusal, this objection is disposed of by the construction of the act just

adverted to. If that construction is right, as I am inclined to believe, it is not necessary to justify this set-off that the money claimed was in a situation to be sued for. By the deposit, the defendants dealt with the bank, and by taking the bill, the bank, in contemplation of law, dealt with defendants, and thus they became mutual dealers. But be this as it may, in this case there was a check drawn on the bank, and payment refused by the receivers when the bill became due. It is true, that to entitle the debtor of the bank to a set off, his claim must have been in his hands prior to the failure. So it is in the case of bankruptcy, and in the case of insolvent corporations, the proceedings against which under our statute are in the nature of bankruptcy, the rule must be the same. The obvious meaning of our statute is, that set-offs shall be allowed where there have been mutual dealings previous to the failure. To allow the creditor to vary the relation in which he stood to the bank at the time of the failure, by afterwards purchasing or otherwise obtaining claims against the institution, would defeat the most important objects of the law. Such a set-off would not be, in the language of the act, a just set-off according to law or equity. In this case the claim of the defendants arose prior to the failure; and if a demand and refusal prior to the action, be essential to its allowance, which I do not admit, still there is no reason why such a demand and refusal, which is not essential to the justice of the claim, should not be held sufficient, although it was not made till after the failure.

It was further insisted by the counsel of plaintiffs, that they are trustees of the creditors of the bank, and that, by force of the statute under which they are appointed, they stand in the situation of endorsees, against whom there could be no set-off. (4 Halst. 121; 3 Harr. 227; 5 Cow. 231; 3 Wend. 17.) To this I cannot agree. In regard to the case of Haxtun v. Bishop, 3 Wend. 17, it is to be remarked, that the New York statute authorizing the appointment of receivers included in it no directions on the subject of set-offs, and therefore the court felt compelled to consider the case as dependent solely on the set-off law of that state, which is similar to ours. That the receivers under our act do not stand in the position of endorsees,

so far as set-off is concerned, is clearly shown by the express direction to them to allow just set-offs in all cases of mutual dealing between the bank and its debtors. As endorsees, no such set-off would be admissible. They are made, by the act, trustees for the creditors and stockholders, and in this respect only take the place of the corporation itself. They are authorized to institute suits for the debts due to the company, of whatever nature, in their own names; but this right is representative, and not personal. As individuals, independent of their official character, they have no claim, and can maintain no action. In the case of *Ridout* v. *Brough*, (*Cowp.* 135), the Court of Kings Bench said the assignees of a bankrupt were the bankrupt himself, and on this ground held that a set-off might be allowed, before any provision expressly sanctioning it was incorporated into the bankrupt law itself. So I think the receivers, so far as set-offs are concerned, are the bank. If they are to allow set-offs for claims not against themselves, but for claims against the bank, as is plainly their duty, they are not endorsees. If they could sue simply as endorsees, then a defendant might set off a claim he happened to hold against them personally, which could not have been the intention of the act. Whether it would have been doing better justice to the community to require every debtor of the bank to pay his debt to the receivers in full, and to receive of them a dividend for any counter claim he might have against an insolvent institution, we are not at liberty to inquire. Such are not the provisions of the act. In cases of mutual dealing between the bank and its debtor, the receivers are explicitly empowered to allow all just set-offs, so that the only question open to us is, has there been such mutual dealing as the act contemplates or not. In the case of an executor or administrator of an insolvent decedent, he must set off all mutual debts, because they are expressly provided for by the statute of set-offs, enacted in New Jersey so early as 1723, before there was a corresponding act in England. The act in question was designed, I think, to introduce a similar rule, somewhat more extensive in its application, copied substantially from the general bankrupt laws of Great Britain and the United States, and

founded upon the same reasons, in the case of bankrupt incorporations. Whether this be or be not in accordance with natural justice, as I think it is, it is the rule prescribed for the government of the case by the proper authority, and must be obeyed.

Some stress was laid by counsel upon the concluding words of the clause in question, which direct just set-offs to be allowed where " the same ought to be allowed according to law and equity." It was insisted that this means, that they are to be allowed in cases only where they would be available by the previous law of set-offs or upon principles previously recognized in equity. But this argument proves too much. By this construction, as has been shown, there could be no legal set-offs at all, and the clause itself would be entirely superfluous. The words " according to law and equity," in the connection in which they are used, mean, I suppose, that in the case of mutual dealing such set-offs are to be allowed as are in themselves just, whether in their nature they be legal or equitable.

I am of opinion that the set-offs claimed ought to be allowed, and that there should be a new trial.

POTTS, J. This case brings up a question which has not received a judicial decision in this state. Which ever way it may be decided, it will affect important interests; and it certainly demands a very careful consideration.

The claim here presented by the defendants is in the nature of a set-off sought to be established at law, and the question is, can it be allowed by the fair construction of " the act to prevent frauds by incorporated companies." *Rev. Stat.* 133.

I am of opinion that the appointment of the receivers under this statute did not constitute them virtually endorsees of this bill, before maturity, from the bank, and thus place them in a situation to resist this set-off on that ground, as was suggested in the argument. They are created trustees for the special purposes, and with the powers and duties specified in the act; and whatever they were bound to do in reference to the defendants' claim by the provisions of that act, we are bound in

this suit to require them to do. The statute is their guide, and it must be ours.

Let us look then for a moment at some of its provisions. It provides for the appointment of receivers, enacts that they are to be deemed and taken to be receivers or trustees for the creditors and stockholders of the company, and authorizes them to take possession of the estate and effects of the corporation, with power to institute suits at law or in equity. They are clothed with authority, in their discretion, to compound and settle with any debtor of the company, or with persons having possession of their property, or in any way responsible in law or equity to the said company at the time of its insolvency, upon such terms and in such manner as they shall deem just and beneficial, under all the circumstances, to the persons interested in the funds and property of the corporation. Powers highly important, and having reference manifestly to that class of claims and interests of a doubtful character likely always to be found among the assets of an insolvent company, particularly a banking company, and powers to be exercised as in their discretion they may deem most for the benefit of all the creditors. And then follows the clause most directly bearing on the question now under consideration. " In case of *mutual dealings* between the said corporation and any other person or persons, (they are) to allow *just set-offs* in favor of such persons in all cases in which it shall appear to the said receivers that the same *ought to be allowed* according to *law* and *equity*."

They are to allow just set-offs in case of mutual dealings. Were these parties mutual dealers ? If they were, there would be an end of the question. But it is insisted that these parties really had no *mutual* dealing of any kind. True the defendants had made a deposit in the bank ; true they had taken and held notes of the bank ; and the bank, on the other hand, held a draft accepted by the defendants. But then the bank did not get it from them. They had no direct dealings with the Gas Company in reference to it. They received it from a third party, " the Machine Company," who were the immediate endorsers of the bank. The parties, it is insisted, were mutual

debtors, but not mutual dealers, and therefore not within the plain language of either the act under which the receivers were appointed, or that to enable mutual dealers to discount.

At common law, anterior to our act of 1722 and the statute of 2 *George* 2, *ch.* 22, debts *connected* with each other were allowed to be set off. Where the nature of the dealings or transactions between the parties constituted an account consisting of receipts, payments, debts, and credits, the balance only was considered the real debt due the plaintiff, and he could recover no more on the general issue. Such were the cases of *Dale* v. *Sollet*, 4 *Burr.* 2133; *Le Loir* v. *Bristow*, 4 *Camp. N. P. Rep.* 134; and the books are full of similar cases. And such has always been the rule at common law, both in England and in this state.

But it was the object of the statutes of *George* 2 to go farther, and authorize, in certain cases, debts and demands *unconnected* with each other to be set off. The first act, which is the one above mentioned, enacted that where there were *mutual debts* between the plaintiff and defendant, &c., the one might be set off against the other; and the statute of 8 *George* 2, which made the first act perpetual, enacted that mutual debts might be set off against each other, notwithstanding such debts were deemed in law to be of a *different nature*. Under these statutes, it was only necessary that the claim sought to be set off should be a debt, and that it should be due, and in the same or a representative right, at the time the action was brought to authorize the set-off in an action for the nonpayment of money.

The language of our statute of set-offs differs somewhat from that of *George* 2. It has adopted substantially the phraseology of the act of 1722, to be found in Allison's edition of the laws, page 66, which act, it may be remarked, was anterior to those of George. It provides, " that if any two or more, *dealing together*, or *having dealt together*, be indebted to each other," they may plead payment and set off, &c. And hence, it is insisted that there can be no set-off here.

The precise legal definition of the words " mutual dealings " does not seem to have been settled. In *Young* v. *Little and*

*Little,* 3 *Green* 1, the court said, "a defendant can only plead payment and give notice of set-off where there have been mutual dealings between him and the plaintiff, and where, if there is a balance due the defendant, he can have judgment for it against the plaintiff;" and the same general language is used in the case of *The Cumberland Bank* v. *Hann,* 3 *Harr.* 222. But neither of these cases throw much light on this particular question.

In the view, however, which I take of this case, it is not very material to inquire whether the claim of the defendants could be set-off by the strict construction of the act to enable mutual dealers to discount, nor what may be the strict legal construction of the words " mutual dealings " in the act to prevent frauds by incorporated companies. For I am of opinion this question ought to be decided upon broader principles.

It has already been intimated that the receivers stand in the place of the corporation, of which they are the trustees ; and that the statute by virtue of which they were created such trustees furnishes the rule of their duty, and must be our guide in ascertaining the rights, as well of the debtors as of the creditors of the corporation : and I may add, that where this is the case, courts of law ought not to apply one rule of construction to its provisions, and courts of equity another rule. The aim of both should be to carry out the equitable principles of the statute ; and hence decisions in equity touching these questions are entitled here to the weight of authority.

In the case of *McLaren* v. *Pennington et al.,* 1 *Paige* 102, the supplement to the statute, under which the defendants were appointed trustees, contained substantially the same provisions as are found in the twelfth section of the act to prevent frauds by incorporated companies ; and the chancellor there held that " the complainant could make any defence to an action brought against him by the trustees, which he might have made against a suit brought by the corporation, had it continued in existence ;" and that, " in relation to his set-off, there could be no doubt of his equitable right to be allowed for any demand which he had against the bank at the time of the re-

peal of its charter." But the chancellor added, that " if he had purchased up bills of the bank, or procured the assignment of other claims since that time, he could not avail himself of *them* as a set-off, but must come in for his distributive share with the rest of the creditors."

In *Miller* v. *The Receivers of the Franklin Bank*, 1 *Paige* 444, the public administrator of the city of New York was allowed to offset, against a debt due from him to the bank, a demand for a deposit in the bank, and also the bills of the institution in his hands at the time of the failure ; and similar set-offs have been allowed in other cases in New York. *Matter of Receiver of Middle District Bank*, 1 *Paige* 585 ; *Holbrook* v. *Receivers Amer. Fire Ins. Co.*, 6 *Paige* 227.

In the case of *The State Bank* v. *The Receivers of the Bank of New Brunswick*, 2 *Green's Ch. R.* 270, which came up under the provisions of our statute, the same construction was adopted. The State Bank, having one hundred dollars of the funds of the Bank of New Brunswick in hand at the time of the failure of the latter institution, claimed to set off against it so much of the bills of the bank in their possession at the same time ; and the chancellor allowed it, though he admitted that, under the provisions of the statute to enable mutual dealers to discount, it could scarcely be allowed; for, he said, " the act upon which the court is now called to adjudicate (the act to prevent frauds by incorporated companies) does not confine itself to *legal set-offs ;* it refers to *just set-offs*, and expressly directs the receivers to allow them where they ought to be allowed according to law not only, but according to *equity* also. It would seem, (he said) from the phraseology of the statute, that the legislature had something ·more in view than the general provisions of law in regard to set-offs."

The right of set-off is founded on principles of natural justice and equity. In *Green* v. *Farmer*, 4 *Burr.* 2220, Lord Mansfield, in delivering the opinion of the court, remarked, " Natural equity says that cross-demands should compensate each other by deducting the less sum from the greater ; and that the difference is the only sum which can be justly due." " Where there were mutual debts unconnected, the law said

they should not be set off, but each must sue. The natural sense of mankind was first shocked at this in the case of bankrupts, and it was provided for by 4 *Anne*, &c. (directing mutual demands to be balanced);" and he attributes the origin of the statutes of *George* 2 to the glaring injustice of not setting off mutual debts against each other.

And, for this reason, the statute has always not only been construed with great liberality, but courts of law have been disposed to carry out its equitable principles even beyond the strictness of its letter. In the case of *The State* v. *Welsted*, 6 *Halst.* 398, Chief Justice Ewing said, that " besides the set-off by statute, courts of law have assumed and exercised a jurisdiction over mutual demands deducting one from the other, or satisfying one by means of the other, in analogy to the wise and beneficial provisions of the statute; not however because supported by it, but because incidental to the due administration of the laws, and flowing from the right to control suitors to such a course as is demanded by equity and justice. But (he adds) this extraordinary power is only exercised where demands are fixed and ascertained by the admission of the parties."

Now admitting that we could not allow this set-off under the statute enabling mutual dealers to discount, and that these parties do not sustain to each other the relation of " mutual dealers," in the language of the statute in reference to frauds by incorporated companies, and that it cannot be allowed without invoking the extraordinary power of the court to enlarge, for equitable ends, the scope of the first statute, or resorting to the general equity of the second, still, I have no doubt in a proper case we may do either. Is this such a case? Do the defendants, as between themselves, and the other creditors of the bank, represented by the receivers, stand in a situation to entitle them to the exercise, in their behalf, of this extraordinary or equitable power?

If this claim on the part of the defendants had had any connection with that held by the receivers; if, for instance, the draft had been discounted for the defendants, and the deposit and the notes had been the proceeds of it; or if, in any way,

it had appeared that the money had been deposited, and the notes taken with the mutual understanding that the amount should be applied to the payment of the draft when it became due; or the mutual indebtedness had been at all the result of direct mutual dealings between the parties, or had grown even incidentally out of a course of mutual dealings, doubtless it would have been within the strict doctrine of legal set-off.

Here it is a case of mutual indebtedness, and a case where the demands are ascertained and unquestioned on both sides. The bank, at the time of its failure, held the accepted draft of the defendants; the defendants at the same time had a deposit in the bank, and held notes of the bank. The indebtedness on both sides was just, and but for the failure of the institution, would have been settled between them. And a case could hardly be presented where, upon principles of natural justice and strict right, parties would be more clearly entitled to have their mutual claims set off against each other. I think, therefore, that it comes within the fair construction of the words used in the statute itself.

The statute directs the receivers to allow just set-offs in all cases in which it shall appear to them that the same ought to be allowed according to law and equity; and although "mutual dealing" is the phrase used in the statute to point out the class of cases upon which this provision is to operate, yet it is not going very far, or resorting to a strained construction, to say, that where *mutual credits* have been given, *mutual dealings* are presupposed.

It is, however, not to be inferred, from what has been said, that if the defendants in this case had claimed to set off not only their deposit, but all the notes of the bank they held at the time of its failure, they could have had a judgment for the balance which would have been due them from the bank. They do not make any such claim, nor is there any thing in the statute that would justify it. Nor is it to be inferred that if the defendants had acquired their claim against the bank, by purchasing up its notes or liabilities after its failure, that such claim would have availed them in this suit any more than it would have availed them in equity.

But I am clearly of opinion that in this case, when there was, at the time the right of action accrued, and when the suit was commenced, a mutual indebtedness existing between the parties, in an amount fixed and undisputed on both sides, where the debts are of the same character, and were fixed at the time of the failure of the bank, we cannot say that the receivers ought not, under the equity of the statute which is their guide, to have allowed this claim to be set off. In allowing it, they would have been sustained by the case in 2 *Green's Ch. Reports ;* by the course of equity decisions in New York ; by the practice understood to exist in this state in the settlement of insolvent estates ; and, I may add, by what seems always to have been the sense of natural justice among mankind ; for it seems to have been universally admitted, that where there is an ascertained mutual indebtedness between A. and B., the *balance*, if any, is in truth and justice the sum actually due ; that one debt has in effect paid the other ; and that where nothing remains to be done by the parties but to write up the account and strike the balance, that should be considered done which ought to be done. This would be the rule in chancery, and in this case we ought not here to establish a different one.

The result is, that the verdict must be set aside and judgment entered for the defendants, with costs.

Separate opinions were given by the judges, except Judge NEVIUS, who dissented.

CITED *in Van Wagenen* v. *Pat. Sav. Bk.,* 2 *Stock.* 18 ; *Brewer* v. *Norcross,* 2 *C. E. Gr.* 226.